William J. Briggs, II (Pro Hac Vice)
WJBriggs@Venable.com
VENABLE LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 229-9933
Fax: (310) 229-9901

Carissa J. Davis (Pro Hac Vice)
CDavis@Venable.com
VENABLE LLP
1144 Fifteenth Street, Suite 3600
Denver, CO 80202
Telephone: (303) 301-1490
Fax: (303) 301-1491

W. Greg Lockwood, OSB No. 114415
WGLockwood@GRSM.com
GORDON REES SCULLY MANSUKHANI LLP
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Fax: (503) 616-3600

*Attorneys for BRIDGE Housing Corporation*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| BRIDGE HOUSING CORPORATION,<br><br>Plaintiff, | Case No.: 3:25-cv-02439-SI |
| v. | MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR VIOLATION OF INJUNCTION AND CONTEMPT JUDGMENT |
| ADDIE SMITH,<br><br>Defendant. | [Request for Expedited Hearing] |

## I. CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7-1(a), undersigned counsel for Plaintiff BRIDGE Housing Corporation ("BRIDGE") certifies that they emailed Defendant Addie Smith ("Ms. Smith") to confer regarding the relief requested in this motion. Counsel explained that the motion seeks Ms. Smith's compliance with the Confirmed Permanent Injunction, payment of fees and costs owed to BRIDGE, and compliance with the conditions set forth in the Court's April 27, 2026, Contempt Judgment (ECF No. 27). Counsel explained that because lesser sanctions have been unavailing, BRIDGE seeks coercive incarceration as a sanction. Counsel requested Ms. Smith provide her availability to confer further by phone. Counsel explained that if Ms. Smith preferred not to confer by phone, she could respond by email. Counsel advised that if the matter could not be resolved by conferral, BRIDGE would file this Motion, and unless the Court ordered otherwise, the rules provide that she will have fourteen (14) days after service of the motion to file her response. Finally, Counsel provided Ms. Smith with a link to the Local Rules. Ms. Smith did not respond to the email, nor did she contact Counsel by telephone or other means.

## II. MOTION

BRIDGE, by and through its attorneys, Venable LLP, respectfully moves this Court for an Order requiring Ms. Smith to show cause why she should not be held in further civil contempt for violating the Confirmed Permanent Injunction, for failing to make any payment on fees and costs owed to BRIDGE, and for failing to take the remedial steps required by Paragraph 3 of the Court's April 27, 2026, Judgment (ECF No. 27) (the "Contempt Judgment").

Since the Court held her in contempt on April 27, 2026, Ms. Smith has not filed the sworn statement required by the Contempt Judgment. She has not removed the offending posts. Upon information and belief, she has paid none of the accrued fines to the Registry of the Court. She has

paid nothing toward BRIDGE's fees and costs the Court awarded. And she has also continued to direct Prohibited Statements to BRIDGE's funders, business partners, and government actors, among others. The $200 daily fine has not moved her toward compliance, nor has the Court's order that she pay BRIDGE's fees and costs. Because lesser sanctions have been unavailing, BRIDGE requests an Order requiring Ms. Smith to show cause why she should not be held in further civil contempt and, if she does not satisfactorily purge her contempt, confined until she complies.

## III. FACTUAL AND PROCEDURAL HISTORY

This Court set forth the factual and procedural background in its April 27, 2026, Findings of Fact and Conclusions of Law supporting the first Contempt Judgment. ECF No. 25. BRIDGE incorporates that background by reference, restates select procedural history for the Court's convenience, and summarizes the events since April 27, 2026.

On March 13, 2026, the Court confirmed the Arbitration Award in its entirety. ECF No. 20. "By Confirming the Arbitration Award, the Permanent Injunction became an Order of the Court ('Confirmed Permanent Injunction')." ECF No. 25 at 11. On March 20, 2026, the Court entered Final Judgment. ECF No. 24. The Final Judgment provides that the Confirmed Permanent Injunction, as restated below, "shall remain in effect in perpetuity." ECF No. 24 ¶ 2.

> Addie Smith is enjoined from taking any action, directly or indirectly, that is intended to or has the effect of interfering with BRIDGE Housing Corporation's ("BRIDGE") business relationships through defamatory statements or otherwise. Specifically, Addie Smith shall cease and desist from contacting third parties to the extent such contact involves prohibited statements about BRIDGE.
>
> Third parties include, but are not limited to, all of BRIDGE's current and prospective funders, donors, lenders, housing authorities, general contractors, subcontractors, oversight agencies and commissions, and other entities with whom BRIDGE transacts business. Third parties include individuals who are employed by, sit on the Boards of, or are affiliated with any of the foregoing third parties.

> Prohibited statements include, but are not limited to, those which are designed to, or have the effect of, discouraging the third party from entering into or continuing its relationship with BRIDGE.
>
> Statements are about BRIDGE if the reasonable listener would believe they relate to the company itself or BRIDGE's current or former leadership, or employees acting in their capacity as such. For the avoidance of doubt, BRIDGE's leadership and/or employees include, but are not limited to, Ken Lombard, Delphine Sherman, Sierra Atilano, Rebecca Hlebasko, Jen Nelson, Nancy Nelson, Kira Bogle, Marco Ponce, Karen Felix, Chris Felix, and Sarah Buck.

*Id*.

The Final Judgment also awarded BRIDGE the principal sum of $232,803.68 for attorneys' fees and costs incurred in the arbitration, with interest. ECF No. 24 ¶¶ 5–7. The Court retained jurisdiction to enforce the Final Judgment and Confirmed Permanent Injunction. ECF No. 24 at 3. To ensure Ms. Smith could not claim ignorance, Counsel mailed a copy of the judgment via Fed Ex and Certified Mail and emailed a copy to Ms. Smith. ECF No. 34 [Decl. of Davis] at ¶¶ 1, 3.

Ms. Smith continued to egregiously violate the Confirmed Permanent Injunction. ECF No. 26. On April 27, 2026, this Court held Ms. Smith in contempt because she "willfully violated the Confirmed Permanent Injunction." ECF No. 26 at 1. The Court noted that the "request of Ms. Smith has been simple from the beginning-stop defaming BRIDGE and its personnel, and leave its funders, lenders, business partners, and housing authorities alone." *Id*. The Court went on to explain that "[n]o one is forcing Ms. Smith to violate the Court's Orders, and her behavior is entirely within her control." *Id*. The Court recounted that BRIDGE obtained its first injunction against Ms. Smith in November 2025, and "[f]rom that moment on, BRIDGE has had to seek continual relief from the Arbitrator and the Court to receive protection for which it was already entitled since the first injunction was entered." *Id*. at 2. Put simply, "Ms. Smith has caused BRIDGE to repeatedly request and receive the same protections time and time again." *Id*.

The Court ordered BRIDGE to submit its calculation of reasonable attorneys' fees and costs, finding that Ms. Smith's payment of those fees and costs was an appropriate compensatory sanction for her continued violations. *Id*. at 2–3.

The Court imposed further coercive sanctions on Ms. Smith and gave her ample opportunity to avoid the same. *Id*. at 3. The sanctions were "carefully crafted to incentivize Ms. Smith 'to comply with the court's orders in the future' and [were] therefore [] 'conditioned upon [Ms. Smith's] continued noncompliance.'" *Id*. (quoting *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1481 (9th Cir. 1992)). The Court made clear that Ms. Smith had, and continues to have, "the opportunity to avoid these coercive sanctions by taking the [proscribed] remedial steps." *Id*. (citing *Omnigen Rsch., LLC v. Yongqiang Wang*, 2018 U.S. Dist. LEXIS 250096, *33–34 (requiring patent-infringing defendant to submit proof of compliance with Court order and imposing $200 a day fine to be imposed if party failed to come into compliance within 21 days)). The remedial steps were as follows:

> 3. Within 21 days of entry of this Judgment, Ms. Smith shall file with the Court a sworn statement under penalty of perjury that:
>
> a. identifies all social media accounts and public online platforms under her ownership or control;
>
> b. confirms that she has removed all content that violates or falls within the scope of the Confirmed Permanent Injunction;
>
> c. includes supporting documentation (e.g., screenshots, URLs, or account records) evidencing such removal and compliance with the Confirmed Permanent Injunction; and
>
> d. affirms that she will not, now or in the future, knowingly violate the Confirmed Permanent Injunction.
>
> 4. If Ms. Smith fails timely to comply with Paragraph 3, a fine of $200 per day shall automatically commence on the 22nd day after entry of this Judgment and continue until Ms. Smith satisfactorily complies with the requirements set forth in Paragraph 3 above. Fines shall be payable to the registry of this Court.

ECF No. 27.

Consistent with past practice, Counsel mailed to Ms. Smith copies of the filings. ECF No. 34 [Decl. of Davis] at ¶ 3. The filings were sent via FedEx and Certified Mail. *Id*. Counsel also sent Ms. Smith the filings via email. *Id*.

21 days came and went, and Ms. Smith failed to take any of the remedial actions ordered by the Court. Ms. Smith failed to take down the offending posts, and she failed to file the required sworn statement. *See* ECF No. 34 [Decl. of Davis] at ¶¶ 4-7; *See generally* Docket *BRIDGE v. Smith*, 3:25-cv-02439-SI. As a result, the $200 daily fine began to accrue automatically on May 19, 2026, the 22nd day after entry of the Contempt Judgment. ECF No. 27 ¶ 4. Upon information and belief, Ms. Smith has not paid any portion of the accrued fines.

The Court directed BRIDGE to submit its calculation of reasonable attorneys' fees and costs incurred in the instant matter. ECF No. 26 at 2. BRIDGE did so on May 18, 2026. ECF No. 28. The Court approved BRIDGE's fees and costs in the amount of $36,693.10 and $1,704.40, respectively, with interest accruing at a rate of 4.10%. ECF No. 32. Ms. Smith's payments were due to begin by August 14, 2026. *Id*. at 8. Ms. Smith has paid nothing. ECF No. 35 [Decl. of Lombard] at ¶¶ 3, 4. Likewise, Ms. Smith has not paid any part of the $232,803.68 arbitration fee and cost awarded in the Final Judgment. *Id*. at ¶¶ 2, 4; ECF No. 24 ¶ 5–7.

Ms. Smith continued, and continues to this day, to violate the Confirmed Permanent Injunction, including as recently as September 28, 2026.

On May 17, 2026, using the Scooter account, Ms. Smith publicly commented on a post from California Governor Gavin Newsom about new housing projects funded by Proposition 1.[1] ECF No. 34 [Decl. of Davis] at ¶ 8. Ms. Smith commented: "Do not allow Bridge Housing, Avanath Capital Management, or Brighthaven Communities to be part of this project. These

[1] This Court has already found that BRIDGE established by clear and convincing evidence that Ms. Smith is the one operating the "@scooter_ames" account. *See* ECF No. 25 at 14–16.

companies are racist. They discriminate against Black and Brown employees. They allow White supervisors to create racist, hostile work environment, and much more!" *Id.* at ¶ 8. As this Court has already recognized, Avanath Capital Management and Brighthaven Communities are business partners of BRIDGE, and Ms. Smith has previously identified them as targets. *See* ECF No. 25 at 12, 20; ECF No. 1-8 at 4 (Ms. Smith proclaiming that, "[s]he will be speaking about the funding, including all donations, grants, and monies from banks received by the Claimants and others. Companies like LISC, NEF, PGIM, Amazon's Housing Equity Fund, BMO, KeyBank and all others will have to laws to govern how they dispense financial assistance to companies like Bridge, Avanath and Brighthaven Communities and others."); *id.* at 5 ("I will still be communicating with all donors to Bridge Housing and Brighthaven Communities ... These orders are meaningless."); *id.* (Ms. Smith stating that she "will continue to communicate with all organizations working towards oversight for Bridge Housing, Avanath, and Brighthaven Communities ... The order entered by Retired Judge Trapp is unenforceable and invalid.").

On June 1, 2026, using the Scooter account, Ms. Smith commented on a State Bar of California post that the Arbitrator and BRIDGE engaged in a "Quid Pro Quo scam," where BRIDGE paid the Arbitrator "18k" for a "favorable judgment." ECF No. 34 [Decl. of Davis] at ¶ 9.

On August 11, 2026, using the Scooter account, Ms. Smith commented on a JAMS post that the Arbitrator and BRIDGE "colluded to 'win' their mediation case," that BRIDGE "wrongfully terminated a black employee then lied about it," and that the Arbitrator "was paid $18k." *Id.* at ¶ 10.[2]

[2] JAMS is the dispute resolution center at which BRIDGE and Ms. Smith engaged in arbitration.

On September 20, 2026, using the "Addie Smith" Facebook account (facebook.com/aae.smiff), Ms. Smith commented on a Portland Business Journal post about property management safety. *Id.* at ¶ 11. Ms. Smith stated: "Investigate why?! Companies like Brighthaven, Bridge Housing, Avanath… [and] organizations like National Equity Fund, and others don't prioritize safety of their staff. The staff, almost all the time, work in hostile environments with racist supervisors. I can name names, too." *Id.* As this Court has already recognized, National Equity Fund (a.k.a. "NEF"), is one of BRIDGE's largest funders, and Ms. Smith has frequently targeted both NEF and its parent company, LISC. *See* ECF No. 25 at 9–10 (describing Ms. Smith's extortionary threat to make the same accusations against NEF if it did not cut ties with BRIDGE).

On September 28, 2026, using her Facebook account, Ms. Smith published a post tagging BRIDGE, Avanath, NEF, LISC, LISC Milwaukee, CBS LA, and CBS LA news anchor Pat Harvey.[3] ECF No. 34 [Decl. of Davis] at ¶ 12. The post stated:

> Bridge Housing ,BrightHaven Communities and Ken Lombard, CEO, need thorough investigations. We have evidence of alleged senior abuses, funding and financial improprieties; severe incidents of crime and safety issues on/inside Bridge Housing properties; evidence of violations of Fed, State, ADA Codes Fire Code regulations ; pictures, taped resident testimonials, police reports, and direct communications with Ken Lombard. WAUS has it all.
> Time to INVESTIGATE Bridge Housing Inc.,
>
> Michael Pugh at #LISC, Matthew Reilein at #NEF and many others, knows that Ken Lombard is stealing money, not paying fair wages to employees, violating housing laws, allowing staff to work in hostile work environments, allowing staff to be discriminated against and more! The board at Bridge Housing knows he's a liar and a thief.

---

[3] Pat Harvey is Mr. Lombard's wife, and as this Court has previously recognized, Ms. Smith has made Prohibited Statements to both Ms. Harvey and her employer CBS LA. *See e.g.* ECF No. 25 at 12–13 (listing examples of Ms. Smith's Prohibited Statements to Ms. Harvey and CBS LA); *Id.* at fn. 5 (noting "[t]his does not appear to be the first time Ms. Smith has attacked the spouse of her perceived enemy and contacted their employer. In *Fox v. Smith*, Civ. Action No. 15-1-9035-52 (Sup. Ct. Cobb Cty., GA 2016), when Ms. Smith fell behind on her rent, she "repeatedly and falsely accused the husband [the landlord] of being a pedophile and the wife a collaborator and conspirator with her husband. Ms. Smith went so far as to make her accusations to both of their employers." ECF 1–6 at 11–12.").

#brighthaven communities #AvanathCapitalManagement
#BridgeHousing
#Avanath #KenLombard

What About Us usa

*Id.*[4]

Ms. Smith attached two images to the post, both depicted below.







[4] Spacing errors in original.

*Id*.

On the same day, using her Facebook account, Ms. Smith posted two comments on a reel from Avanath Capital Management. *Id*. at ¶ 13. The first comment directed readers to "X" to "Look up 'whataboutususa'!" *Id*. In the second comment, Ms. Smith stated that "Bridge Housing , Bright Haven mgmt and partner to Ken Lombard need thorough investigations . We have evidence of Alleged , senior abuses , funding and financial improprieties, severe incidents of crime and safety issues on and inside Bridge Housing properties . Evidence of violations of FED , State , ADA Codes Fire Code regulations . Pictures , taped resident testimonials , police reports , and direct communications with Ken Lombard. WAUS has it all . Time to INVESTIGATE Bridge Housing Inc".[5] *Id*.

On September 28, 2026, the @whataboutususa account posted a campaign-style image with the text "Bridge Housing Inc , CEO Ken Lombard and their close ties to LA News Media personalities keeps the truth hidden ! We have the receipts . Whataboutususa@gmail.com".[6] *Id*. at ¶¶14, 15. Using the Scooter account, Ms. Smith posted two comments on that post, repeating the bribe accusation she made in her August 11 and June 1 comments on the JAMS and State Bar of California posts, respectively. *Id*. Ms. Smith commented, "I have documented conversations with Bridge Housing HR about racism and discrimination. They fired a Black woman who reported it to them. Ken Lombard increased his salary from $500k to $2 million in less than a year and paid himself bonuses over $65k. Delphine too!" *Id*. at ¶ 15. She also commented, "They also paid retired judge Randa Trapp $18,000 for a judgment against a whistleblower." *Id*.

---

[5] All spacing errors in original.
[6] All spacing errors in original. While BRIDGE suspects Ms. Smith may play some role in the @whataboutususa account, for the purposes of this Motion only, BRIDGE does not contend that Ms. Smith is operating the account.

Finally, the same day, using the Scooter account, Ms. Smith commented on another JAMS post that "[r]etired judge Randa Trapp accepted $18,000 from @BRIDGEhousing to provide an order in their favor against a whistleblower. They fired her for exposing discrimination." *Id*. at ¶ 16.

## IV. LEGAL STANDARD

This Court has the inherent power to enforce compliance with its orders through civil contempt proceedings. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (quoting *In re Dual—Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Dyer*, 322 F.3d 1178, 1190–91 (9th Cir. 2003) (citation omitted). "The sole question is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). If the movant demonstrates noncompliance, the burden shifts to the party alleged to be in contempt to demonstrate that they were unable to comply with the Court order. *Id*.

"Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required" than for criminal contempt sanctions. *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (citation omitted). Accordingly, "civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Id*. (internal citation and quotation marks omitted). "Neither a jury trial

nor proof beyond a reasonable doubt is required." *Id.* (citation omitted). Where affidavits are uncontroverted, a district court need not hold a "full-blown evidentiary hearing." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998).

The purpose of civil contempt proceedings is "to compel obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *United States v. Bright*, 596 F.3d 683, 695–96 (9th Cir. 2010) (citation omitted). There are two (2) forms of civil contempt sanctions: compensatory and coercive. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).

Compensatory sanctions compensate the aggrieved party for "actual loss" resulting from the contemnor's noncompliance. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366 (9th Cir. 1987).

Coercive sanctions are "intended to coerce the contemnor to comply with the court's orders in the future," and are therefore conditioned upon the contemnor's continued noncompliance. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992). Thus, when imposing a coercive civil contempt sanction, the Court must provide a "subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union United Mine Workers of Am. v. Bagwell*, 114 S. Ct. 2552 (1994). When evaluating coercive sanctions, the Court must "consider the character and magnitude of the harm threatened by continued contumacy," as well as the sanction's probable effectiveness. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citations omitted). "Appropriate civil contempt sanctions may include a coercive daily fine, coercive incarceration, or a compensatory fine for actual losses or attorneys' fees and costs resulting from the improper behavior." *United States v. Wiley*, No. 2:17-cv-00426-SU, 2018 U.S. Dist. LEXIS 224142, 2018 WL 6920118, at *3 (D. Or. Oct. 31, 2018) (citing *United States v.*

*United Mine Workers of Am.*, 330 U.S. 258, 304, 67 S. Ct. 677 (1947) and *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147–49 (9th Cir. 1983)). "Incarceration pursuant to an order of civil contempt does not constitute a criminal sentence since the contemnor can terminate his incarceration at any time." *Nudo v. United States (In re Grand Jury Proceedings)*, 1989 U.S. App. LEXIS 24424, *3 (9th Cir. 1989) (internal citation omitted). Indeed, courts have long recognized that when the contemnors "carry 'the keys of their prison in their own pockets,'" the sanction is civil in nature. *Securities and Exchange Commission v. Elmas Trading Corporation*, 824 F.2d 732 (9th Cir. 1987) (quoting *Shillitani v. United States*, 384 U.S. 364, 368, (1965). Thus, when a contemnor is in violation of a court order, has the opportunity to purge her contempt, and simply chooses not to, the court may impose incarceration until the contemnor comes into compliance. *Id*. (affirming District court's civil incarceration sanction explaining that the contemnor could wholly comply with the court's order but that he chose not to and "is simply playing games with the court").

## V. ARGUMENT

BRIDGE has shown, by clear and convincing evidence, that Ms. Smith remains in contempt. The only question, therefore, is as to the appropriate sanctions for the contempt. Because lesser sanctions have been unavailing, incarceration is the only remaining tool to effectively bring Ms. Smith into compliance.

### A. Ms. Smith has not complied with Paragraph 3 of the Contempt Judgment.

Paragraph 3 of the Contempt Judgment is specific and definite. It told Ms. Smith what to file, what the filing must contain, and when it was due. ECF No. 27 ¶ 3. The Order identified the platforms it covers, which are not limited to the Scooter account but include "all accounts on TikTok, X (formerly known as Twitter), YouTube, Facebook, Instagram, and any other social

media, online forum, or digital platform over which Ms. Smith exercises ownership or control." ECF 26 at 3. The deadline came and went, and Ms. Smith failed to take a single action to comply with the Court's directive. "The sole question is whether a party complied with the district court's order." *Donovan*, 716 F.2d at 1240. Ms. Smith did not.

**B. The offending posts remain online.**

Paragraph 3(b) of the Contempt Judgment required Ms. Smith to confirm that "she has removed all content that violates or falls within the scope of the Confirmed Permanent Injunction." ECF 27 ¶ 3(b). The Order required removal of "all posts from her public platforms and accounts to the extent those posts fall within the ambit of Prohibited Statements." ECF 26 at 3. Ms. Smith refused to take the posts down; they remain live on the Scooter account, and they continue to reach the public each and every day they remain online. ECF No. 34 [Decl. of Davis] at ¶¶ 4-7.

**C. Ms. Smith has not paid any of the fees and costs owed to BRIDGE, and upon information and belief, she has not paid the coercive fine.**

The Contempt Judgment made the coercive fine payable to the Registry of the Court. ECF 27 ¶ 4. Upon information and belief, Ms. Smith has paid nothing. Ms. Smith also has failed to make any payments to BRIDGE for its fees and costs. ECF 27 ¶ 2; ECF No. 32; ECF No. 34 [Decl. of Lombard] at ¶¶ 2-4

**D. Ms. Smith has committed new violations of the Confirmed Permanent Injunction.**

Ms. Smith made all the posts at issue in the Motion. Several of the posts were made by Ms. Smith on her personal Facebook account. The remaining posts were made from the Scooter account. This Court has already determined that BRIDGE proved beyond clear and convincing evidence that Ms. Smith is the operator of the Scooter account. ECF No. 25 at 14–15. Having established that Ms. Smith is the one who made the at-issue posts, the next question is whether the posts violate the Confirmed Permanent Injunction. They do.

The Court has already held that the Confirmed Permanent Injunction "does not carve out social media posts from the ambit of conduct that is prohibited." ECF No. 25 at 16. It has already held that tagging and invoking persons connected to BRIDGE and Mr. Lombard is a method Ms. Smith has used to connect them to BRIDGE. *Id*. at 20. Finally, the Court has explained that Ms. Smith "cannot evade the finding of contempt by hiding behind a pseudonym." *Id*. The new posts fall squarely within those holdings.

The May 17 post was designed, plainly, to urge California's Governor not to "allow Bridge Housing,… to be part of" new housing projects funded by Proposition 1. ECF No. 34 [Decl. of Davis] at ¶ 8. The comment accused BRIDGE of racism and allowing "White supervisors to create racist, hostile work environment." *Id.* The Confirmed Permanent Injunction prohibits Ms. Smith from contacting "housing authorities," "oversight agencies," and other third parties with statements that "are designed to or have the effect of, discouraging the third party from entering into or continuing its relationship with BRIDGE." ECF No. 24 ¶ 2. This Court has already found similar statements to constitute Prohibited Statements, and the May 17 post falls within this category. ECF No. 25 at 9.

Ms. Smith clearly designed the June 1 and August 11 posts to have the effect of negatively impacting BRIDGE by accusing the company of wrongdoing in the form of bribes. ECF No. 34 [Decl. of Davis] at ¶¶ 9, 10.

Ms. Smith's September comment on the Portland Business Journal article conveyed the false statement that BRIDGE and several of its business partners (including Brighthaven, Avanath, and NEF) do not prioritize safety and instead create "hostile environments with racist supervisors." *Id*. at ¶ 11. This Court has already found similar statements are Prohibited Statements and that Ms.

Smith has attempted to extort NEF by threatening that if they don't cut ties with BRIDGE they too would be on the receiving end of her baseless false statements. *See* ECF No. 25 at 9–10.

The most recent and egregious violations occurred on September 28, 2026. Ms. Smith's Facebook post tagged BRIDGE, NEF, LISC, Avanath, and CBS LA, and stated that Mr. Lombard "is stealing money, not paying fair wages to employees, violating housing laws," and called him "a liar and a thief." ECF No. 34 [Decl. of Davis] at ¶ 12. The post attached an image calling for "AN EXPANDED STATE AND FEDERAL INVESTIGATION" of BRIDGE and Mr. Lombard. *Id*. The same day, Ms. Smith repeated the same false accusations of financial impropriety that the Court has already found to be Prohibited Statements (*See* ECF No. 25 at 9, 12–13, 16–17) and again falsely stated that BRIDGE bribed the arbitrator to obtain a "judgment against a whistleblower." ECF No. 34 [Decl. of Davis] at ¶¶ 15, 16.

The other September 28 posts fare no better. Ms. Smith took her accusations directly to Avanath, a company with whom BRIDGE transacts significant business, by commenting on Avanath's own reel. *Id*. at ¶ 13; ECF 25 at 12. Those comments accused BRIDGE of financial improprieties and of crime, safety, and code violations at its properties. *Id*. at ¶ 13. The Court has already found that accusations of unsafe housing, failed inspections, and financial impropriety violate the Confirmed Permanent Injunction. *See* ECF 25 at 9. Ms. Smith then used the Scooter account to falsely state that Mr. Lombard raised his own salary and paid himself bonuses, which tracks the salary accusation the Court also found violated the Confirmed Permanent Injunction. *Id*. at ¶ 15; ECF 25 at 9. She extended the same accusation to Ms. Sherman, whom the Confirmed Permanent Injunction names expressly as an executive of BRIDGE. ECF 24 ¶ 2; ECF No. 34 [Decl. of Davis] at ¶ 15. Finally, she falsely stated that BRIDGE fired "a Black woman who reported" racism and discrimination, which tracks the "whistleblower" statement the Court has

already found violated the Confirmed Permanent Injunction. *See* ECF 25 at 13, 17; ECF No. 34 [Decl. of Davis] at ¶ 15. All of these posts clearly and unequivocally constitute Prohibited Statements and therefore violate the Confirmed Permanent Injunction.

Because BRIDGE has shown Ms. Smith has not complied with this Court's Confirmed Permanent Injunction and Contempt Judgment, the burden shifts to Ms. Smith to show that she is unable to comply. *Donovan*, 716 F.2d at 1240. She cannot carry that burden. As the Court found, "No one is forcing Ms. Smith to violate the Court's Orders, and her behavior is entirely within her control." ECF 26 at 1. Ms. Smith did not respond to BRIDGE's prior motion and "failed to present any evidence demonstrating that she is somehow unable to comply." ECF 25 at 20. And while willful disobedience is not a prerequisite to contempt, Ms. Smith has made clear that she has no intent to comply with the injunction. As this Court has observed, "Ms. Smith is not shy about what her intentions are: to disrupt BRIDGE and force out its leadership to retaliate against them for her termination." ECF No. 25 (citing ECF No. 1-1 at 22). "Ms. Smith has proclaimed that she will achieve these goals by disregarding the injunctions and continuing to contact all of BRIDGE's donors, funders, business partners, and other third parties." *Id*. (citing ECF No. 1-8 at 3). Ms. Smith's conduct since the April 27 contempt finding is perfectly consistent with her past conduct, and she has made it clear that she will continue to violate orders unless and until she suffers meaningful consequences.

Thus far, compensatory sanctions have not been sufficient to encourage Ms. Smith to comply with the Court's orders. As explained above, she has failed to pay a single penny on the monetary judgment she owes to BRIDGE. Likewise, the coercive sanctions imposed thus far have been equally unavailing, and Ms. Smith did not comply with a single aspect of the Court's Contempt Judgment. The monetary sanctions the Court selected have not moved Ms. Smith toward

compliance. At this juncture, the only effective sanction is an Order from this Court that if Ms. Smith continues to violate the Confirmed Permanent Injunction or fails to take the remedial steps identified in Paragraph 3 of the Court's Contempt Judgment (ECF No. 27), she will be sentenced to coercive incarceration until she comes into compliance. This unfortunate reality has been one entirely of Ms. Smith's own making.

## VI. CONCLUSION

BRIDGE respectfully requests the Court order Ms. Smith to appear before the Court, on an expedited basis, to show cause as to why she should not be held in civil contempt and incarcerated for her refusal to comply with the court's Confirmed Permanent Injunction and Contempt Judgment. Should Ms. Smith fail to appear or adequately show cause why she should not be held in further contempt, BRIDGE requests the Court find Ms. Smith in contempt and order her incarcerated until she purges her contempt by completing the remedial steps required by Paragraph 3 of the Contempt Judgment. BRIDGE further requests this Court grant such other relief as is just and proper, including awarding BRIDGE its reasonable attorneys' fees and costs incurred in connection with this Motion and subsequent litigation of the same.

Respectfully submitted this 11th day of October, 2026.

VENABLE LLP

William J. Briggs, II (Pro Hac Vice)
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 229-9933
Fax: (310) 229-9901
Email: WJBriggs@Venable.com

Carissa J. Davis (Pro Hac Vice)
1144 Fifteenth Street, Suite 3600
Denver, CO 80202
Telephone: (303) 301-1490
Fax: (303) 301-1491
Email: CDavis@Venable.com

W. Greg Lockwood, OSB No. 114415
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Fax: (503) 616-3600
Email: WGLockwood@GRSM.com

*Attorneys for Plaintiff*
*BRIDGE Housing Corporation.*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,258 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: October 1, 2026

VENABLE LLP

William J. Briggs, II (Pro Hac Vice)
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 229-9933
Fax: (310) 229-9901
Email: WJBriggs@Venable.com

Carissa J. Davis (Pro Hac Vice)
1144 Fifteenth Street, Suite 3600
Denver, CO 80202
Telephone: (303) 301-1490
Fax: (303) 301-1491
Email: CDavis@Venable.com

W. Greg Lockwood, OSB No. 114415
1300 SW Fifth Ave., Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Fax: (503) 616-3600
Email: WGLockwood@GRSM.com

*Attorneys for Plaintiff*
*BRIDGE Housing Corporation.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, I electronically filed the foregoing document(s) described as **MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR VIOLATION OF INJUNCTION AND CONTEMPT JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send a notification to the interested parties in this action.

I further certify that I have served/mailed a copy of the foregoing document(s) to the following non-CM/ECF participants or required entities via U.S. Mail, First Class, postage prepaid:

**Addie Smith** *PRO SE Defendant*
1415 SE Pardee Street
Apt. # 404
Portland, Oregon 97202

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on October 1, 2026, at Los Angeles, California.

Jessica B. Jaramillo